UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIVINGSTON EDUCATIONAL SERVICE
AGENCY; SAGINAW INTERMEDIATE
SCHOOL DISTRICT; WALLED LAKE
CONSOLIDATED SCHOOL DISTRICT;
and WAYNE-WESTLAND COMMUNITY
SCHOOLS,

      Plaintiffs,

v.

Xavier Becerra, SECRETARY OF
DEPARTMENT OF HEALTH AND HUMAN
SERVICES; DEPARTMENT OF HEALTH
AND HUMAN SERVICES; Jooyeun Chang,
ASSISTANT SECRETARY OF
ADMINISTRATION FOR CHILDREN AND
FAMILIES; ADMINISTRATION FOR
CHILDREN AND FAMILIES; and
Bernadine Futrell, DIRECTOR OF THE
OFFICE OF HEAD START,

      Defendants.
_____/

Case No. 22-cv-10127

Hon. Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER [12]**

This case concerns the November 30, 2021 Interim Final Rule with Comment Period, Vaccine and Mask Requirements to Mitigate the Spread of COVID-19 in Head Start Programs, 86 Fed. Reg. 68,052 (Nov. 30, 2021) (the "Rule") (to be codified at 45 C.F.R. pt. 1302). Plaintiff School Districts challenge the legality of the Rule. Presently before the Court is Plaintiffs' Motion for Temporary Restraining Order. (ECF No. 12.) Plaintiffs seek to stay the Rule while their Motion for Preliminary Injunction remains pending. (*See* ECF No. 5.) Federal Agency and Administrator Defendants oppose the motion. (ECF No. 18.) Plaintiffs filed a Reply. (ECF No. 19.) For the following reasons,

1

Plaintiffs' Motion for Temporary Restraining Order is GRANTED IN PART AND DENIED IN PART.

I.      **Background**

On September 9, 2021, President Biden announced his administration's plan to require all educators in the federally funded Head Start program[1] to be vaccinated. At the end of November, Defendants upheld President Biden's promise—the Administration for Children and Families, an agency within the U.S. Department of Health and Human Services, issued the Rule, entitled "Vaccine and Mask Requirements to Mitigate the Spread of COVID-19 in Head Start Programs."

As one would expect from its title, the purpose of the Rule is to prevent or reduce the spread of COVID-19 throughout Head Start school facilities and among its students, staff, and others involved with the program. The Rule aims to accomplish this goal by requiring universal masking for all individuals two years of age and older, and vaccination against COVID-19 for all Head Start staff, contractors who interact with or provide services to students and families, and volunteers who work in classrooms or directly with children.[2] While the masking requirement became effective upon publication of the Rule, Head Start staff, contractors, and volunteers have until January 31, 2022 to obtain their second dose in a two-dose COVID-19 vaccination series or their first dose in a single-

---

[1] Head Start is a federal discretionary grant program that promotes school readiness in low-income children up to age five. *See* 42 U.S.C. § 9831.
[2] There are several noted exceptions to both the masking and vaccination components of the Rule. For instance, masks are not required for individuals who are eating or drinking, for children when they are napping, or if one cannot wear a mask because of a disability or other health concern. Further, in accordance with Federal law, staff, contractors, and volunteers who cannot be vaccinated because of a disability under the ADA, medical condition, or sincerely held religious belief, practice, or observance may be granted an exemption to the vaccine requirement. 86 Fed. Rep. 68060-61.

dose series. If a Head Start agency fails to meet this or any other standard, the Secretary of Health and Human Services is required to take certain corrective action including initiating proceedings to terminate the program's funding if an identified deficiency is not corrected. 42 U.S.C. § 9836a(e)(1).

In response to President Biden's executive action affecting the Head Start program, a school district in Texas and 25 states immediately filed suit in federal courts in Texas and Louisiana. *See* Original Complaint, *State of Texas et al. v. Becerra, et al.*, No. 5:21-cv-00300 (N.D. Tex. Dec. 10, 2021), ECF No. 1; Complaint, *State of Louisiana, et al. v. Becerra, et al.*, No. 3:21-cv-04370 (W.D. La. Dec. 21, 2021), ECF No. 1. Ultimately, three weeks after the complaint was filed in the first case, those courts granted the plaintiffs' requests and preliminarily enjoined Defendants from implementing and enforcing the Rule pending a resolution on the merits of each case. *Texas v. Becerra*, No. 5:21-CV-300-H, 2021 WL 6198109, at *26 (N.D. Tex. Dec. 31, 2021); *Louisiana v. Becerra*, No. 3:21-CV-04370, 2022 WL 16571, at *8 (W.D. La. Jan. 1, 2022).

The injunctions in the Louisiana and Texas cases did not extend to enforcement of the Rule in Michigan and the 24 states that chose not to file a lawsuit. Weeks after the Louisiana and Texas cases were decided, and eleven days before the vaccination provision was set to go into effect, Plaintiffs in this case filed their 143-paragraph complaint challenging the implementation and enforcement of the Rule within their districts. (*See* ECF No. 1.) Four days after they filed their Complaint, Plaintiffs filed a 52-page motion for preliminary injunction. (*See* ECF No. 24.) Finally, on January 25, less than a week before the Rule's deadline for vaccination, Plaintiffs served Defendants. (ECF No. 13.) Plaintiffs also filed a Motion for Temporary Restraining Order requesting

expedited consideration, and a decision from this Court, by January 31, 2022. (ECF No. 12.)

The Complaint provides that Plaintiffs are Head Start grantees and contractors who serve children and families in four areas of Southeast Michigan. Plaintiffs allege the implementation of the Rule will cause them irreparable harm as they will be forced to choose between continued federal funding or losing unvaccinated staff, contractors, and volunteers. (ECF No. 5, PageID.138-39.) If staff members quit or are terminated because of the Rule, they argue, Plaintiffs would be forced to close classrooms, reduce services offered to students, and/or reduce the number of students in the program. (*Id.*; ECF No. 1, PageID.10-14.) Plaintiffs identify the following quantities of unvaccinated staff members (as of January 21, 2021): 37 unvaccinated of 137 total Livingston ESA staff members; 14 or 15 unvaccinated[3] of 180 total Saginaw ISD staff members; and four unvaccinated of approximately 76 Wayne-Westland staff members. (ECF No. 1, PageID.10-14; ECF No. 19-1, PageID.409.) Plaintiff Walled Lake Consolidated School District employs 22 individuals in their Head Start program, but Plaintiffs provided no information regarding the number of unvaccinated staff members. (ECF No. 1, PageID.12.)

In the present motion, Plaintiffs seek a temporary restraining order ("TRO") that will maintain the status quo while their Motion for Preliminary Injunction remains pending.[4] Defendants oppose the TRO, but did not respond to the merits of Plaintiffs' arguments. (ECF No. 18.) Rather, Defendants note that Plaintiffs chose not to file their Motion until

---

[3] Plaintiff's Complaint provides that Plaintiff Saginaw ISD currently employs approximately 180 staff members and that 8% of those staff members are unvaccinated. (ECF No. 1, PageID.12.) Thus, the Court arrives at 14 or 15 unvaccinated staff members.
[4] Briefing deadlines and a hearing on Plaintiffs' Motion for Preliminary Injunction have been set for February.

six days before the Rule's vaccine requirement was scheduled to go into effect despite having known about the mandate since at least November 30, 2021, if not since President Biden's announcement in early September. (*Id.*) Defendants state that they are unable to respond to Plaintiffs' lengthy complaint and motion, which incorporates by reference their motion for preliminary injunction, on "such a rushed timeline." (*Id.* at PageID.393.)

## II.     Legal Standard

Rule 65 of the Federal Rules of Civil Procedure authorizes the issuance of a TRO. The Sixth Circuit has explained that the purpose of a TRO under Rule 65 is to preserve the status quo until the Court has had an opportunity to determine whether a preliminary injunction should issue. *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). Before ruling on a motion for a TRO, the Court considers the same four factors it would on a motion for preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

## III.    Analysis

### A.     Likelihood of Success on the Merits

Without a response on the merits from Defendants, the Court is unable to properly analyze Plaintiffs' nine causes of action to determine if Plaintiffs have shown a strong likelihood of success. But the Court agrees with Defendants' argument that they should not be faulted for failing to respond in three days to an eleventh-hour motion that Plaintiffs had months to prepare. It is well-established that a party seeking extraordinary relief such

as a TRO "must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). It does not appear that Plaintiffs have shown such diligence here.

Plaintiffs' case appears to be similar to the cases filed in Louisiana and Texas late last year in which the plaintiffs prevailed in obtaining injunctive relief. *See Texas v. Becerra*, No. 5:21-CV-300-H, 2021 WL 6198109, at *26 (N.D. Tex. Dec. 31, 2021); *Louisiana v. Becerra*, No. 3:21-CV-04370, 2022 WL 16571, at *8 (W.D. La. Jan. 1, 2022). Without an evidentiary hearing, however, the Court cannot determine whether the context and situation presented by Plaintiffs here support the same result. The Court does not have adequate information to determine if Plaintiffs are likely to succeed on the merits on any one of their claims. Thus, the first factor considered to evaluate the right to injunctive relief is neutral.

### B.    Irreparable Injury

The second factor to be considered is whether Plaintiffs would suffer irreparable injury absent a stay. *Ohio Republican Party*, 543 F.3d at 361. A party's harm is "irreparable" when it cannot be adequately compensated by money damages. *Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, 544 F. Supp. 2d 592, 603 (E.D. Mich. 2008). For an injury to constitute irreparable harm, it must also "be certain, great, and actual." *Lucero v. Detroit Public Schools*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001) (citing *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

The Court finds Plaintiffs' argument on this point to have some persuasive force. Plaintiffs have alleged in their verified complaint that up to 56 unvaccinated individuals in their districts (excluding those in Walled Lake Consolidated School District) would choose to leave Head Start rather than get the shot. (ECF No. 1, PageID.10-14.) It would not be

6

surprising that such a high rate of turnover at one time would cause classrooms to close and student populations or services offered to students to be reduced—at least until the school districts can hire suitable replacements. While money damages could make whole a staff member who received less pay due to a program closure, the Head Start students and their families could not get back missed classroom time. Notably, the closure of Head Start classrooms specifically goes against one of the Rule's stated purposes, to "reduce closures of Head Start programs, which can cause hardship for families, and support the Administration's priority of sustained in-person early care and education . . . ." 86 Fed. Rep. 68053. For these reasons, the Court finds the second factor in this analysis weighs in favor of a temporary stay.

### C. Potential to Cause Substantial Harm to Others and Public Interest

The remaining two factors considered to evaluate Plaintiffs' right to injunctive relief weigh in favor of denying Plaintiffs' request. Granting the stay has the potential to cause substantial harm to others in that unvaccinated staff members at Head Start facilities may be diagnosed with COVID-19 while the stay is in effect. It is now common knowledge that COVID-19 cases proliferate exponentially, but evidence suggests that vaccines decrease viral transmission. *See* David W. Eyre et al., *Effect of Covid-19 Vaccination on Transmission of Alpha and Delta Variants*, New Eng. J. Med. (Jan. 5, 2022), https://www.nejm.org/doi/full/10.1056/NEJMoa2116597. There is a chance then, that unvaccinated staff members will contract COVID-19 and spread it to children who are too young to be vaccinated. These children most likely would spread the disease amongst their families, who could potentially infect others, and so on—each infection carrying with it the possibility of severe illness, hospitalization, or death. *See* Lopez AS, et al.,

7

*Transmission Dynamics of COVID-19 Outbreaks Associated with Child Care Facilities — Salt Lake City, Utah, April–July 2020*, MMWR Morb Mortal Wkly Rep 2020;69:1319–1323. DOI: http://dx.doi.org/10.15585/mmwr.mm6937e3 (noting that child-care settings have been linked to infections and hospitalizations in family members).

The ever increasing number of COVID-19 cases would not serve the public interest. Nor would any suggestion or inference, however misinformed, that COVID-19 vaccines are unsafe or ineffective. Beyond the obvious risk of severe illness and death from the virus itself, valuable health care resources would need to be expended for unvaccinated COVID-19 patients that otherwise could have avoided needing treatment. "The unvaccinated overcrowd our hospitals [and] are overrunning the emergency rooms and intensive care units . . . ." *See Remarks by President Biden on Fighting the COVID-19 Pandemic* (Sept. 9, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/. This leaves less healthcare worker attention and fewer hospital beds for those with non-COVID-related emergencies such as heart attacks, strokes, and pancreatitis. *See id.*

**IV.   Conclusion**

While the Court is instructed to balance all four factors pertaining to a request for injunctive relief, "[a] showing of 'probable irreparable harm is the single most important prerequisite' " to granting injunctive relief. *Lucero*, 160 F. Supp. at 801 (quoting *Reuters Ltd. v. United Press Int'l., Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). The Court's finding for Plaintiffs on this factor tips the scale slightly in their favor. Thus, the Court will grant relief to Plaintiffs.

**V.     Order**

"A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979)).

Accordingly, it is **HEREBY ORDERED** as follows:

Plaintiffs' Motion for Temporary Restraining Order is **GRANTED IN PART AND DENIED IN PART**;

The Motion is **GRANTED** in that the Court hereby temporarily enjoins Defendants from implementing and enforcing the vaccination provision of the Interim Final Rule with Comment Period, Vaccine and Mask Requirements to Mitigate the Spread of COVID-19 in Head Start Programs, 86 Fed. Reg. 68,052 (Nov. 30, 2021), on the up to 56 unvaccinated individuals identified in Plaintiffs' Complaint along with the number of unvaccinated individuals that are currently employed in Head Start programs in Walled Lake Consolidated School District;

Plaintiffs' Motion is **DENIED** to the extent they request any other relief and as to any other staff members or volunteers, including new staff members who begin work after entry of this Order;

The Court further orders that no security bond shall be required under Federal Rule of Civil Procedure 65(c);

9

This Order shall remain in effect until the latest possible date and time allowable under Federal Rule of Civil Procedure 65(b), or until the Court issues its ruling on Plaintiffs' Motion for Preliminary Injunction (ECF No. 5), whichever comes first.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 31, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 31, 2022, by electronic and/or ordinary mail.

s/Lisa Bartlett
Lisa Bartlett
Case Manager