UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIVINGSTON EDUCATIONAL SERVICE
AGENCY; SAGINAW INTERMEDIATE
SCHOOL DISTRICT; WALLED LAKE
CONSOLIDATED SCHOOL DISTRICT;
and WAYNE-WESTLAND COMMUNITY
SCHOOLS,

        Plaintiffs,

v.

Xavier Becerra, SECRETARY OF
DEPARTMENT OF HEALTH AND HUMAN
SERVICES; DEPARTMENT OF HEALTH
AND HUMAN SERVICES; Jooyeun Chang,
ASSISTANT SECRETARY OF
ADMINISTRATION FOR CHILDREN AND
FAMILIES; ADMINISTRATION FOR
CHILDREN AND FAMILIES; and
Bernadine Futrell, DIRECTOR OF THE
OFFICE OF HEAD START,

        Defendants.
_____/

Case No. 22-cv-10127

Hon. Nancy G. Edmunds

**<u>ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL [50]</u>**

In an opinion and order dated March 4, 2022, this Court denied Plaintiffs' motion for preliminary injunction of the Department of Health and Human Services' November 2021 Interim Final Rule, Vaccine and Mask Requirements to Mitigate the Spread of COVID-19 in Head Start Programs, 86 Fed. Reg. 68052 (2021) (codified at 45 C.F.R. pt. 1302) (the "Rule"). (ECF No. 46.) Plaintiffs Livingston Educational Service Agency ("Livingston") and Wayne-Westland Community Schools ("Wayne-Westland")[1] filed an appeal of that Order on March 24, 2022. Before the Court is Plaintiffs' Motion for Injunction Pending Appeal, brought

---

[1] On March 23, 2022, Plaintiffs Saginaw Intermediate School District and Walled Lake Consolidated School District were dismissed from the case without prejudice. (ECF No. 47.) The only Plaintiffs that remain in this action are Livingston Educational Service Agency and Wayne-Westland Community School.

1

pursuant to Federal Rule of Civil Procedure 62(d). (ECF No. 50.) Defendants filed a response in opposition to Plaintiffs' motion and Plaintiffs filed a notice waiving their right to reply. (ECF Nos. 56, 57.) The Court, being fully aware of the facts and issues surrounding the present motion, finds that the decision process would not be significantly aided by oral argument. Plaintiffs' motion will therefore be decided on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Plaintiffs' motion is DENIED.

## I.     Background

The Court provided a comprehensive background of the relevant facts in its March 4, 2022 *Order Denying Plaintiffs' Motion for Preliminary Injunction* (the "Order"). (*See* ECF No. 46.) For purposes of the present motion, the Court adopts those facts and finds no need to repeat them.

## II.    Legal Standard

Federal Rule of Civil Procedure 62(d) allows a district court to grant an injunction to secure a party's rights when an appeal is pending. In deciding such a motion, the court considers the same factors that are considered on a motion for preliminary injunction: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction. *Grutter v. Bollinger*, 137 F. Supp. 2d 874, 875 (E.D. Mich. 2001); *see also Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (discussing factors for a preliminary injunction); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (noting that the factors are the same under Fed. R. Civ. P. 62(c) and under Fed. R. App. P. 8(a)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153

(6th Cir. 1991). When balancing the factors, the probability of success on the merits "is inversely proportional to the amount of irreparable injury plaintiffs will suffer" absent an injunction. *Id.* at 154. "Simply stated, more of one excuses less of the other." *Id.* For instance, if a movant can demonstrate "irreparable harm that decidedly outweighs any potential harm to the defendant," he must then only show the minimum "serious questions going to the merits." *Id.* at 153-54 (quoting *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985)). By the same sliding scale, a movant who can only show a small amount of irreparable harm, or irreparable harm that is outweighed by harm to the defendant or the public interest, must "establish a high probability of success on the merits." *See id.* at 153. "[T]he burden of meeting this standard is a heavy one," and it is more common that a movant's request will be denied. *Grutter*, 137 F. Supp. at 876.

### III.   Analysis

#### A.   Likelihood that Plaintiffs will Succeed on the Merits

This Court has already found that Plaintiffs are unlikely to succeed on the merits of their claims. (ECF No. 46, PageID.1174.) Plaintiffs argue they have raised at least "serious questions going to the merits," because district courts in Texas and Louisiana enjoined the Rule across the plaintiff states in those cases. *See Texas v. Becerra*, No. 5:21-CV-300-H, 2021 WL 6198109, at *26 (N.D. Tex. Dec. 31, 2021); *Louisiana v. Becerra*, No. 3:21-CV-04370, 2022 WL 16571, at *8 (W.D. La. Jan. 1, 2022). But as discussed in the Order denying Plaintiffs' motion, this argument fails. (*See* ECF No. 46, PageID.1164 n.3.) Both the Texas and Louisiana cases were decided before the Supreme Court upheld a similar vaccine requirement in *Biden v. Missouri*, 142 S. Ct. 647, 654 (2022). Accordingly, the district court opinions in those cases are not persuasive.

3

Additionally, as the Court explained in its Order, *Biden v. Missouri* is more closely aligned with the facts here than are other cases that Plaintiffs ask this Court to follow. For instance, the CDC eviction moratorium case, *Tiger Lily, LLC v. HUD*, 5 F.4th 666 (6th Cir. 2021), and the federal contractor vaccine mandate case, *Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022), both involve interpreting distinctive provisions of statutory authority applicable to other pandemic-related decisions by the executive branch. The contrasting and narrow factual circumstances of those cases make them inapplicable here. *See Kentucky v. Biden*, -- F. Supp. 3d ----, No. 3:21-CV-00055-GFVT, 2021 WL 5587446, at *1 (E.D. Ky. Nov. 30, 2021) ("This is not a case about whether vaccines are effective. They are. Nor is this a case about whether the government, at some level, and in some circumstances, can require citizens to obtain vaccines. It can. The question presented here is narrow."). Plaintiffs have therefore not raised the minimum "serious questions going to the merits," that would be required even if they could show "irreparable harm that decidedly outweighs any [other] potential harm," which they cannot. This factor weighs against an injunction.

### B.     Irreparable Harm to Plaintiffs

Not every injury constitutes "irreparable harm." First, the harm alleged must be "both certain and immediate, rather than speculative or theoretical." *Griepentrog*, 945 F.2d at 154 (citing *Wisconsin Gas Co. v. Federal Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C.Cir.1985)). The availability of "adequate compensatory or other corrective relief" also weighs against a finding that harm is irreparable. *Id.* "The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Wisconsin Gas Co.*, 758 F.2d at 674 (quotation marks and brackets omitted). Courts also consider "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided"

4

when evaluating harm that is likely to occur absent an injunction. *Griepentrog*, 945 F.2d at 154 (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir.1987).

On January 31, 2022 and March 4, 2022, this Court found that, absent an injunction, Plaintiffs' schoolchildren and their families would likely be irreparably harmed by the loss of in-person learning time caused by staff shortages. (See ECF No. 20, PageID.417, ECF No. 46, PageID.1176.) But weeks have passed since then, and months have passed since Plaintiffs first became aware their staff would need to be vaccinated. Indeed, Plaintiffs have known about the Rule, to some extent, since President Biden's announcement nearly seven months ago. (*See Remarks by President Biden on Fighting the COVID-19 Pandemic* (September 9, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/).

Despite this significant time period, Plaintiffs produced little, if any, evidence that they are making good faith efforts to secure or hire vaccinated individuals to replace staff members who are unwilling to be vaccinated. For instance, the representative for Livingston states in his January 29, 2022 declaration that once he "became aware of the significant number of staff, contractors, and volunteers that [Livingston] would have to exclude from [its] Head Start program, [it] began working diligently with counsel to initiate litigation," (ECF No. 42-9, ¶ 23), but there is no mention in that same declaration of any diligent efforts to find potential staff replacements to minimize potential consequences of the Rule taking effect. Nearly one month later, on February 23, 2022, Plaintiff Livingston states that it "*anticipates* significant difficulty in hiring staff," and that "[f]illing vacancies caused by the Rule *will be* extraordinarily difficult." (ECF No. 42-8, PageID.1041, 1047) (emphasis added.) The only mention of any attempt to hire replacement staff by Plaintiff Livingston is the statement that

5

it "already had one applicant decline to accept an open position because of the vaccine mandate." (*See* ECF No. 42-8, PageID.1049.) But the record is devoid of any information pertaining to recruitment efforts or responses from qualified and vaccinated individuals. Similarly, though Wayne-Westland references "the tight labor market and national teacher shortage," there is no record of the school district's recruitment efforts or any attempt to cover its losses once the Rule took effect.

The Secretary of Health and Human Services anticipated losing staff due to the imposition of the Rule and factored this loss into the decision to require vaccines. *See, e.g.*, 86 Fed. Reg. 68091-92. To weigh the risk of staff losses against the time saved by averting COVID-19 cases, the Secretary "adopt[ed] an assumption that each Head Start staff that quits in response to the [Rule] will leave a vacancy that lasts an average of two weeks." *Id.*, 68091. This assumption was "intended to reflect an average duration among vacancies that are filled faster and vacancies that are filled slower than two weeks." *Id.* The two-week time period factored in efforts Head Start centers were expected to make to anticipate resignations and identify replacements. *Id.* It was predicted that Head Start centers would "prepare in advance for vacancies." *Id.*

It does not appear from the record that Plaintiffs made efforts to prepare for the when the Rule became effective. The Court sympathizes with Plaintiffs' obvious preference to retain its current employees, but given the lack of evidence that Plaintiffs sought to minimize their losses[2] by diligently searching for replacement staff, the Court no longer finds Plaintiffs' arguments regarding loss of staff and associated classroom closures amount to "irreparable

---

[2] Plaintiffs have not provided updated information to the Court regarding the number of staff that remain unvaccinated and did not receive an exemption so the extent of any loss remains unknown. As of late February, 37 of 137 Livingston Head Start staff were unvaccinated though the district did not yet process exemption requests (ECF No. 42-8, PageID.1045, 1046); at least four of 48 total Head Start staff members were unvaccinated in Wayne-Westland (ECF No. 42-10, PageID.1063).

harm." The record before the Court shows only self-imposed injury for which "other corrective relief" is available. *Griepentrog*, 945 F.2d at 154.

Plaintiffs' next argument regarding the need to separate Head Start students from other children also fails to show irreparable harm. Relying on their declarations from before the Rule went into effect in their programs, Plaintiffs reference the potential for stigmatization of Head Start students if they are separated from non-Head Start students whose teachers could remain unvaccinated. (ECF No. 50, PageID.1193-94.) Whether rearranging classrooms would cause such stigmatization to occur is entirely speculative, however, and this does not suffice to show irreparable harm. *See Griepentrog*, 945 F.2d at 154.

Additionally, Plaintiffs have not demonstrated that they would suffer an injury "of such *imminence* that there is a clear and present need for equitable relief. . . ." *Wisconsin Gas Co.*, 758 F.2d at 674. As the Government points out, the statutory scheme provides for a number of steps that must occur before the program can be considered to have a "deficiency" that would threaten its funding. (ECF No. 56, PageID.1292-93.) *See also* 45 C.F.R. § 1304.2(a) (when HHS "determines through monitoring . . . that a grantee fails to comply with" a performance standard such as the vaccine requirement, "the official will notify the grantee promptly in writing, identify the area of noncompliance, and specify when the grantee must correct the area of noncompliance."); 42 U.S.C. § 9832(2)(A), (C) (when non-compliance remains "unresolved," that becomes a "deficiency," or a "systemic or substantial material failure of an agency in an area of performance"); *id.* § 9836a(e)(1)(B) (Secretary may require agency to "correct the deficiency not later than 90 days after the identification of the deficiency," or "to comply with" a "quality improvement plan").

Given the foregoing, Plaintiffs have failed to show that they would be irreparably harmed if an injunction does not issue. Thus, this factor weighs against granting an injunction while Plaintiffs proceed with their appeal.

### C. Substantial Harm to Others and the Public Interest

The final two factors courts consider "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). In its Order, the Court found the substantial harm to others that would result if the Rule were enjoined caused this factor to tilt decisively in the Government's favor. (ECF No. 46, PageID.1176-77.) Plaintiffs admit that this Court "is rightly concerned about the spread of COVID-19 in our community," but argue this does not "automatically guarantee" that the Government should prevail or "justify significant discharges of staff in the middle of the school year." (ECF No. 50, PageID.1195.) These arguments do not reduce the risk of substantial harm to others or the public. Vaccines remain the "safest and most effective way to protect individuals and the people with whom they live and work from infection and from severe illness and hospitalization if they contract the virus." 86 Fed. Reg. 68054-55. Both Head Start children and families as well as the public at large have an interest in maintaining the Rule, which utilizes the most effective known tool to fight the effects of the pandemic in the federally-funded Head Start program. Accordingly, the final factors also weigh against granting an injunction.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Injunction Pending Appeal (ECF No. 50) is **DENIED**.

**SO ORDERED.**

Dated: April 8, 2022

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 8, 2022, by electronic and/or ordinary mail.

                                              s/Lisa Bartlett
                                              Lisa Bartlett
                                              Case Manager